**FILED**

SEP 1 4 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **BERNARD GRAHAM,** | : | |
| **P.O. Box 8045** | : | |
| **Woodbridge, VA 22195** | : | |
| | : | |
| **Plaintiff,** | : | Case: 1:15–cv–01479 |
| | : | Assigned To : Chutkan, Tanya S. |
| **v.** | : | Assign. Date : 9/14/2015 |
| | : | Description: Employ. Discrim (H) |
| **LORETTA LYNCH, in her official capacity** | : | |
| **as Attorney General of the United States,** | : | |
| **950 Pennsylvania Avenue, NW** | : | |
| **Washington, DC 20530-0001** | : | **JURY ACTION** |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT

### JURY TRIAL DEMANDED

#### Introduction

1.    This is an action for retaliation and reprisal by the United States Marshals Service

in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*

("Title VII").  Plaintiff BERNARD GRAHAM, a former United States Marine and South

Carolina State Trooper, is an African American male who joined the Marshals Service in 1990.

Plaintiff GRAHAM was repeatedly denied promotion and other leadership opportunities

necessary for advancement within the Marshals Service, while less-qualified white colleagues

were promoted and given leadership opportunities.  After he initiated the administrative process

to challenge the racial discrimination he experienced from the Marshals Service, Plaintiff

GRAHAM faced retaliation and reprisals within the Marshals Service on two fronts: (1) senior

RECEIVED

AUG 1 2 2015

Clerk, U.S. District and

management within the Marshals Service ignored the results of their own investigation into his discrimination claims, purposely delayed resolution of those claims, took actions intended to discourage Plaintiff GRAHAM from pursing discrimination claims, and refused to allow Plaintiff GRAHAM to be promoted, even though he was the most qualified candidate for one or more positions he sought; and (2) his African American supervisor and others who conspired to manipulate an internal investigation in order to deny Plaintiff GRAHAM promotion opportunities in retaliation for his refusal to cooperate with other African American Marshals Service employees in their pursuit of a class action against the Marshals Service.

2.      The United States Marshals Service (USMS), the oldest federal law enforcement agency in the United States, has a shameful history of systemic discrimination against African Americans. Defendant LYNCH, the Attorney General of the United States, is the head of the Marshals Service's parent agency, the Department of Justice (DOJ). Defendant LYNCH's predecessor, Attorney General Eric Holder "pledged and promised" that "no employee will be denied equal opportunity because of race," and that DOJ would "seek to resolve workplace conflicts, confrontations, and complaints in a prompt, impartial, confidential, and constructive manner." DOJ Equal Employment Opportunity Policy, http://www.justice.gov/sites/default/ files/jmd/legacy/2014/03/02/08-eeo-policy.pdf. Notwithstanding that pledge and promise, the Marshals Service flagrantly ignored both this DOJ policy and Title VII and subjected Plaintiff GRAHAM to reprisals and retaliation by, *inter alia*, failing to adequately investigate Plaintiff GRAHAM's discrimination claims, ignoring or discounting evidence of the validity of those claims, intentionally delaying resolution of his claims before the Equal Employment Opportunity Commission ("EEOC"), and refusing to select Plaintiff GRAHAM for promotion. At the behest

of his African American supervisor and others, the Marshals Service retaliated against Plaintiff

GRAHAM by instituting and extending an investigation into his job performance in order to

ensure that he would not be considered for promotion. Had it not been for these retaliatory

actions, Plaintiff GRAHAM would have been selected for promotion in December of 2008.

## Parties

3.      Plaintiff BERNARD GRAHAM, an African American, a Chief Inspector with the

United States Marshals Service, currently assigned to INTERPOL in Washington, D.C., is a

resident of the Commonwealth of Virginia

4.      Defendant LORETTA LYNCH is the Attorney General of the United States,

and the head of the United States Department of Justice. The United States Marshals Service is a

component of the United States Department of Justice and was BERNARD GRAHAM's

employer at all material times.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3)

and 28 U.S.C. § 1331.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §

2000e-5(f)(3).

## Plaintiff's Exhaustion of His Administrative Remedies

7.      On April 27, 2009, Plaintiff GRAHAM spoke with an Equal Employment

Opportunity counselor for the United States Marshals Service regarding retaliation for filing a

previous EEO claim.

8.      On June 17, 2009, Plaintiff GRAHAM filed a formal complaint of retaliation with the Marshals Service EEO Office.  The matter was investigated by the Marshals Service, proceeded before an EEOC AJ, and was dismissed at Plaintiff GRAHAM's behest on June 20, 2011.

9.      The Department of Justice Claims Adjudication Officer ("CAO") gave Plaintiff GRAHAM an opportunity to submit additional information and arguments before issuing the final agency decision.  Plaintiff did so.  The CAO issued the DOJ Final Agency Decision on October 18, 2011, denying GRAHAM's claim.

10.     Plaintiff GRAHAM timely appealed the Final Agency Decision to the EEOC on November 11, 2011.  The EEOC denied Plaintiff GRAHAM's appeal on May 12, 2015.  Copies of the decision was received by Plaintiff and his attorney on May 17, 2015.

## FACTS

### Plaintiff's Employment Background

11.     Plaintiff BERNARD GRAHAM was hired as a Deputy United States Marshal on February 25, 1990.  His initial pay grade was GS-1811-7.  Before joining the Marshals Service, Plaintiff GRAHAM had served in the United States Marine Corps and worked as a state trooper in South Carolina.

12.     Despite consistent excellent or outstanding performance reviews, Plaintiff GRAHAM was not promoted at the same rate as his white colleagues, and repeatedly was denied leadership opportunities within the agency.

13.     Plaintiff GRAHAM was promoted to GS-1811-13 on October 20, 2002,  more than twelve and one-half years after he became a Deputy U.S. Marshal.  Upon information and

belief, most white deputies are promoted to GS-1811-13 after eight years. He was assigned as an instructor at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia.

14.     On January 25, 2004, Plaintiff GRAHAM was transferred to the Office of Congressional Affairs and was appointed as the Marshals Service Legislative Affairs Liaison. In that capacity, Plaintiff GRAHAM worked for over two years in the office of Representative John Conyers, an African American congressman from the State of Michigan.

15.     On July 25, 2008, approximately two years after Plaintiff GRAHAM completed his tour with Congress, the Marshals Service created a new position for which he was well-qualified: "Deputy Chief of the Office of Congressional Affairs." This position was not advertised, and was given to a white female who was significantly less-qualified than Plaintiff GRAHAM.

16.     From March of 2006 through September 3, 2006, Plaintiff GRAHAM was detailed to the Office of the Director of the Marshals Service, where he spent six months working for the Manager of the Home Intrusion Detection System ("HIDS") Program, through which home security systems were installed in the homes of all current and former federal judges.

17.     On September 3, 2006, Plaintiff GRAHAM was transferred to the Judicial Security Division, assigned to the Office of Protective Intelligence. On September 17, 2006, he was assigned to the security detail for the President's Drug Czar, John Walters.

18.     On May 27, 2007, Plaintiff GRAHAM became a Supervisory Deputy U.S. Marshal at the District of Columbia Superior Court ("DC/SC"). From June of 2007 until February of 2009 Plaintiff's immediate supervisor was Chief Deputy U.S. Marshal James Brooks, an African American male.

19.     Plaintiff GRAHAM worked at DC/SC until March of 2009.

20.     From March of 2009 through July of 2009 Plaintiff GRAHAM was assigned to the Judicial Security Division.  From August 1, 2009 through August 1, 2010, he was assigned to the Training Division as a GS-1811-13 Senior Inspector.  On August 1, 2010, he was promoted to GS-1811-14 and assigned as Chief Inspector of the Training Division at USMS Headquarters in Arlington, Virginia.

21.     Plaintiff GRAHAM has been detailed to INTERPOL in Washington D.C. since September of 2013.

## Plaintiff's Discrimination Claim

22.     The claim that sparked the retaliation that is the basis for this complaint involved, *inter alia*, denials of opportunities for promotion.  Promotion opportunities for GS-1811-13, 14, and 15 positions within the Marshals Service are advertised through the posting of Merit Promotion Announcements ("MPA").  Candidates must have taken the most recent biennial Merit Promotion ("MP") Examination and must have submitted an MP Open Season application package.  These packages are reviewed by USMS raters who assign points for each part of the applicant's package.  The exam and application scores are aggregated and become the candidate's total score.  Candidates for GS-1811-14 and 15 positions are interviewed and rated from "very strong" to "weak" in eight categories.  After the interviews are completed, certificates of the most highly qualified applicants ("cert lists") are sent to the recommending officials, who return the lists with the candidates ranked in order of preference.  The 10-member USMS Career Board also reviews the materials and determines whether they agree or disagree with the order of preference.  The final selections are made by the Director of the Marshals Service.

23.     The applicants receive numerical scores in six areas: exam, experience, training,

education, awards, and essay.  There is no published formula for calculating the "experience"

score.  An analysis of records obtained through the Freedom of Information Act, 5 U.S.C. §552

("FOIA") revealed, *inter alia*, that Plaintiff GRAHAM received fewer points for "experience"

than less-experienced white deputies.

24.     In early 2008, Plaintiff GRAHAM applied for ten different MPAs.  Each open

position was awarded to a white candidate, most or all of whom were less qualified than Plaintiff

GRAHAM.  Had Plaintiff GRAHAM's "experience" score not been at least ten points lower than

the scores given to similarly-experienced white deputies, he would have been on the cert lists for

seven of those MPA, and been ahead of the selected candidate for three of those MPAs.

25.     On October 16, 2008, Plaintiff GRAHAM advised a Marshals Service EEO

counselor that he had been subjected to racial discrimination.  He filed his formal complaint on

November 28, 2008.

26.     A senior USMS official interviewed by the USMS investigators confirmed that

Plaintiff GRAHAM was not selected for merit promotion because of his race.

27.     The EEOC Administrative Judge assigned to Plaintiff GRAHAM's discrimination

claim called the USMS investigation the worst he had ever seen.

### The *Grogan* Class Action

28.     On October 15, 2008, Deputy U.S. Marshal David Grogan filed a class action

complaint in this Court, alleging discrimination claims similar to those asserted by Plaintiff

GRAHAM.  The putative class is defined in Grogan's Amended Complaint as "All current and

former African American Deputy U.S. Marshals who are serving or have served with the USMS

at any time during the liability period." *Grogan v. Holder*, D.D.C. Civil Action No. 1:08-cv-01747-BJR, Doc.66, ¶ 84, p.31 (hereafter "*Grogan*").

29.     Plaintiff GRAHAM's supervisor at the time, James Brooks, is one of the *Grogan* plaintiffs.

30.     During the weeks and months before the *Grogan* complaint was filed, Plaintiff GRAHAM was contacted by other African American USMS employees, including his supervisor, James Brooks, all seeking to persuade him to join the *Grogan* class action, but Plaintiff GRAHAM refused.

31.     Several of the *Grogan* plaintiffs, in particular his supervisor, James Brooks, pressured Plaintiff GRAHAM to use his perceived influence to persuade members of Congress to pressure the Marshals Service and the Department of Justice to settle their discrimination claims.  GRAHAM refused.

### Retaliatory Acts by the USMS

### (1) Continuing efforts to discourage Plaintiff from pursuing his Title VII claims

32.     On September 27, 2010, shortly after the EEOC Administrative Judge ("AJ") assigned to Plaintiff GRAHAM's EEO claim characterized the USMS investigation into Plaintiff GRAHAM's discrimination claim as "the worst [he'd] ever seen," the Marshals Service filed a motion requesting that GRAHAM's complaint be remanded to the agency to be held in abeyance until the District Court made a determination regarding class certification in the *Grogan* case. The Marshals Service based its motion on the EEOC's Management Directive 110 ("MD-110"), which requires that individual claims that come within a defined class be subsumed into a

pending class action. On November 9, 2010, the AJ granted the motion over Plaintiff GRAHAM's objection.

33.    In connection with the Final Agency Action required in response to the AJ's decision, on December 14, 2010, the Department of Justice Complaint Adjudication Officer ("CAO") noted his limited mandate and agreed to abide by the AJ's decision not to hold a hearing. However, the CAO also cited a case that "appears to contradict the USMS's implied argument," and urged Plaintiff GRAHAM to appeal to the EEOC.

34.    On January 10, 2011, Plaintiff GRAHAM appealed the AJ's decision to the EEOC, arguing that MD-110 applies to class actions pending before the Commission, and not to class actions claims filed in District Court, which proceed in accordance with the Federal Rules of Civil Procedure. In response, the Marshals Service argued, *inter alia*, that because MD-110 prohibits opting out of an EEOC class action, Plaintiff GRAHAM could not opt out of the *Grogan* class action pending in federal district court.

35.    After the appeal was fully briefed, Plaintiff GRAHAM's counsel discovered a United States Department of Justice Office of Legal Counsel Opinion that states unequivocally that the class action provisions of MD-110 applied only to the administrative process, and not to class actions in District Court, which are governed by the Federal Rules of Civil Procedure. *See* http://www.justice.gov/sites/default/files/olc/opinions/2004/09/31/op-olc-v028-p0254.pdf. This opinion was submitted to the General Counsel of the Marshals Service, but the Marshals Service did not withdraw the contrary argument it presented to the EEOC.

36.    When Plaintiff GRAHAM's attorney told a USMS lawyer that the agency would lose the appeal, the USMS lawyer said, "Yes, but it will take two years." The EEOC granted

others that he would not join their class action and would not lobby members of Congress on their behalf, Brooks asked OII to reopen the investigation into Plaintiff GRAHAM.

42.     Senior Inspector Sharon Duncan, an African American female employee of the Marshals Service, was assigned to investigate the allegations for OII.  Sometime prior to September of 2008, Plaintiff's supervisor, James Brooks, had bragged to Plaintiff GRAHAM that Brooks had had an intimate relationship with SI Duncan.

43.     Senior Inspector Duncan, who characterized her role as "purely fact-gathering" completed her investigation sometime in November of 2008. Her two-page summary report was not submitted until February of 2009.

44.     The facts gathered by SI Duncan establish that Plaintiff GRAHAM was the COTR when only one of the seventeen DSOs at issue was hired.  That DSO was a Nigerian-born former Montgomery County Corrections Officer who claimed to be a naturalized citizen. Her file lacked a copy of her naturalization certificate.

45.     Ten or more of the challenged DSOs were hired before Plaintiff GRAHAM became the COTR.  Upon information and belief, Plaintiff GRAHAM's predecessor COTR was neither investigated nor admonished for hiring unqualified DSOs.

46.     The OII concluded that Plaintiff GRAHAM had not received proper training, and issued him a letter of instruction.

### b. Merit Promotion Announcements

47.     In the Fall of 2008, Plaintiff GRAHAM applied for four MPAs for which selections were to be made in December of 2008.  On or about November 17, 2008, Plaintiff GRAHAM told SI Duncan that he was concerned that the open investigation would prevent him

from being considered for promotion.  She told him that she was keeping the investigation open

to prevent his promotion, and implied that she was competing for one or more of the positions

for which he had applied.

48.     In mid-November of 2008, Plaintiff GRAHAM asked Acting U.S. Marshal

Benjamin Kates about his chances for promotion.  Kates told him that "They are not going to

allow your name to move forward."

49.     On February 2, 2009, U.S. Marshal Kates sent the following email to the head of

OII, Stanley Grisavage:

"Stan,
Thanks. I know you are incredibly short handed but can we get this accomplished
and sent to ERT so the process can move forward. We are coming up on a 2nd Career
Board so SDUSM Graham's chance of being promoted will again be eliminated.
    Thanks
    Ben

Mr. Grisavage responded:  "Ben- I understand and we will make it a priority."

50.     In 2010, the Department of Justice Office of the Inspector General ("OIG"),issued

Report I-2010-003, "Review of the USMS Office of Internal Investigations, March 2010."

Prior to consideration by the Career Board, USMS employees applying for
promotions have their names searched in OII's database to determine if they are
subjects of any open investigations. In September 2009, 68 out of the 362 (19
percent) employees who submitted an application to the Career Board for
consideration were the subjects of investigations and were automatically deemed
ineligible for consideration. These employees may incur financial losses and
forfeit career advancement even if they are ultimately cleared of misconduct.

https://oig.justice.gov/reports/USMS/e1003.pdf.

51.     Notwithstanding the evidence that Plaintiff GRAHAM was not considered for

promotion during the pendency of the internal investigation, the Marshals Service represented to

the EEOC that Plaintiff GRAHAM had been considered for promotion during that time.  The OIG findings directly contradict the position taken by the Marshals Service before the EEOC.

52.     One of the jobs for which Plaintiff GRAHAM applied was given to a white candidate who was not on the cert list and had been arrested twice for Driving Under the Influence.  One of these arrests involved a hit and run while he was driving a Marshals Service vehicle.

### c. Admissions by the Marshals Service

53.     Plaintiff GRAHAM was promoted to GS-1811-14 on August 1, 2010, and assigned as Chief Inspector of the Training Division at USMS Headquarters in Arlington, Virginia. In that capacity, in 2011 he was present at an orientation and training session for newly appointed U.S. Marshals and Chief Deputy U.S. Marshals. During one of the presentations to that class, the General Counsel for the Marshals Service described the practice of supervisors using internal investigations as a means to prevent certain employees from competing for promotion.

54.     In an affidavit filed with this Court in the *Grogan* case, Plaintiff GRAHAM's former supervisor James Brooks stated:

> It is common knowledge among African Americans at the USMS that any DUSM who speaks out against race-based discrimination or unfair treatment, or who files an Equal Employment Opportunity ("EEO") complaint to that effect, will be retaliated against by his or her supervisors and USMS leadership. The USMS has engaged in a pattern and practice of coercing African American employees who file complaints of race discrimination by opening internal investigations against them designed to prevent them from accessing promotional opportunities, harm their records or reputations, and force DUSMs to prematurely settle pending claims against the agency. I believe that the USMS engages in such action in order to intimidate African American DUSMs into refraining from submitting complaints of discrimination against their supervisors and the agency.

- 13 -

Case 1:08-cv-01747-BJR Document 145-3, Filed 07/29/13.

55.     The use of the internal investigation to harass and intimidate Plaintiff GRAHAM
and prevent him from being selected for promotion was an adverse employment action in
retaliation for Plaintiff GRAHAM's decision to assert his Title VII claims as an individual, a
protected activity under Title VII.

### (3)  Removal from Supervisory Position

56.     Proposed transfers of personnel with the Marshals Service typcally are discussed
with the affected employee, regardless of whether the employee or USMS management
requested the transfer.

57.     After Plaintiff GRAHAM pursued his discrimination claim and refused to join the
*Grogan* class action, his supervisor, James Brooks, attempted to have Plaintiff GRAHAM
transferred to a non-supervisory position at Marshals Service Headquarters without Plaintiff
GRAHAM's knowledge or consent.

58.     Plaintiff GRAHAM learned about the proposed transfer from Acting U.S. Marshal
Benjamin Kates, whose approval was necessary to effect the transfer.  Plaintiff GRAHAM
objected to the transfer and Kates refused to approve the request submitted by Brooks..

59.     Although his attempt to transfer Plaintiff GRAHAM to a non-supervisory position
failed, Brooks manipulated GRAHAM's duties and responsibilities at DC/SC so that GRAHAM,
a GS-1811-13 supervisor, was required to report to another GS-1811-13 supervisor rather than to
a GS-1811-14 Assistant Chief.

60.     This action by Chief Deputy Brooks was intended to punish, demean, and
embarrrass Plaintiff GRAHAM.

- 14 -

61.    This *de facto* demotion was an adverse employment action in retaliation for

Plaintiff GRAHAM's decision to assert his Title VII claims as an individual, a protected activity

under Title VII.

### FIRST CAUSE OF ACTION

### Violations Of Title VII Of The Civil Rights Act Of 1964
### 42 U.S.C. § 2000e-3

### Ongoing retaliation

62.    Plaintiff GRAHAM re-alleges and incorporates by reference each allegation in the

previous paragraphs of this Complaint.

63.    The Marshals Service retaliated against Plaintiff GRAHAM because of his

opposition to employment discrimination and/or his filing of a complaint of discrimination by

intentionally delaying resolution of his Title VII before the EEOC and subjecting Plaintiff

GRAHAM to adverse employment actions, including denials of promotion and disparate terms

and conditions of employment as compared with his white counterparts.

64.    The actions of the Marshals Service were intentional, deliberate, willful,

malicious, reckless, and conducted in callous disregard of causing harm to Plaintiff GRAHAM.

65.    As a direct result of retaliatory actions by the Marshals Service, Plaintiff

GRAHAM suffered economic losses, mental and emotional harm, anguish, and humiliation.

66.    By reason of the retaliation suffered at USMS, Plaintiff GRAHAM is entitled to

all legal and equitable remedies available under Title VII § 2000e-3.

## SECOND CAUSE OF ACTION

### Violations Of Title VII Of The Civil Rights Act Of 1964
### 42 U.S.C. § 2000e-3

#### Retaliation

67.     Plaintiff GRAHAM re-alleges and incorporates by reference each allegation in the previous paragraphs of this Complaint.

68.     The Defendant violated 42 U.S.C. § 2000e-3(a) by retaliating against Plaintiff GRAHAM for his opposition to employment discrimination and/or his filing of a complaint of discrimination by instituting and prolonging an internal investigation into Plaintiff GRAHAM's conduct for the sole purpose of preventing his promotion.

69.     The actions of the Marshals Service were intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of causing harm to Plaintiff GRAHAM.

70.     As a direct result of retaliatory actions by the Marshals Service, Plaintiff GRAHAM suffered economic losses, mental and emotional harm, anguish, and humiliation.

71.     By reason of the retaliation suffered at USMS, Plaintiff GRAHAM is entitled to all legal and equitable remedies available under Title VII § 2000e-3.

## THIRD CAUSE OF ACTION

### Violations Of Title VII Of The Civil Rights Act Of 1964
### 42 U.S.C. § 2000e-3

#### Retaliation

72.     Plaintiff GRAHAM re-alleges and incorporates by reference each allegation in the previous paragraphs of this Complaint.

- 16 -

73.     The Defendant violated 42 U.S.C. § 2000e-3(a) by retaliating against Plaintiff

GRAHAM for his opposition to employment discrimination and/or his filing of a complaint of

discrimination by removing him from positions of authority.

74.     The actions of the Marshals Service were intentional, deliberate, willful,

malicious, reckless, and conducted in callous disregard of causing harm to Plaintiff GRAHAM.

75.     As a direct result of retaliatory actions by the Marshals Service, Plaintiff

GRAHAM suffered economic losses, mental and emotional harm, anguish, and humiliation.

76.     By reason of the retaliation suffered at USMS, Plaintiff GRAHAM is entitled to

all legal and equitable remedies available under Title VII § 2000e-3.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff BERNARD GRAHAM requests the following relief:

A.      A declaratory judgment that the Marshals Service retaliated against Plaintiff

GRAHAM in violation of Title VII;

B.      an Order directing USMS to adjust Plaintiff GRAHAM's wage rates and benefits

to the levels to which he would be entitled but for the Defendant's unlawful retaliation;

C.      back pay, front pay, lost benefits, and equitable monetary relief for lost

compensation and job benefits;

D.      any other equitable relief to which Plaintiff GRAHAM is entitled;

E.      compensatory damages in an amount to be determined at trial;

F.      litigation costs and expenses, including reasonable attorneys' fees;

G.      pre-judgment and post-judgment interest on the amounts of equitable monetary

relief awarded;

H.      such other and further relief as the Court may deem just and proper.

Dated: August 12, 2015

Respectfully submitted,

*Marie Louise Hagen*

Marie Louise Hagen, DC Bar No. 412411
Law Offices of Marie Louise Hagen, PLLC
5614 Connecticut Avenue, NW #111
Washington, DC 20015
202-297-6053 phone
413-638-8429 facsimile
mlh@mlhagenlaw.com